UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KELVIN ANDRE SPOTTS, *et al.*,

   Plaintiffs,

      v.

UNITED STATES OF AMERICA,

   Defendant.

Civil Action No. 08–44 (CKK)

**MEMORANDUM OPINION**
(June 23, 2008)

      Plaintiffs, 438 current and former inmates at the United States Penitentiary in Beaumont, Texas ("USP Beaumont"), filed this action against Defendant, the United States of America, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C §§ 2671, 1346(b), *et seq.* The gravamen of Plaintiffs' Second Amended Complaint ("SAC") is that Federal Bureau of Prisons ("BOP") officials acted negligently by failing to evacuate USP Beaumont prior to the landfall of Hurricane Rita on September 24, 2005. SAC ¶¶ 225-44.[1] Plaintiffs further allege that BOP agents failed to properly supply the prison during the month that followed, and that during that time inmates were forced to live in substandard conditions and suffered various physical and emotional injuries as a result. *Id.* Defendant has filed a Motion to Transfer Venue to the Eastern District of Texas, in which Defendant argues that venue does not lie in the District of

---

[1] On April 1, 2008, Plaintiffs filed a [7] Motion for Leave to File Second Amended Complaint. As that Motion appears unopposed and Defendant's Motion to Transfer Venue treats Plaintiffs' Second Amended Complaint as the operative complaint in this action, the Court shall grant Plaintiffs leave to file their Second Amended Complaint in the Order accompanying this Memorandum Opinion, and treats that Second Amended Complaint as the operative complaint for purposes of this Memorandum Opinion.

Columbia and that the Eastern District of Texas is a more convenient venue. Plaintiffs oppose Defendant's Motion to Transfer Venue.

Upon searching consideration of the parties' briefs, the exhibits attached thereto, the relevant statues and case law, and the entire record herein, the Court finds that venue for this case does not lie in the District of Columbia and that, in the alternative, the Eastern District of Texas is a more convenient venue for litigating this case. As such, the Court shall grant Defendant's [9] Motion to Transfer Venue to the Eastern District of Texas. Further, the Court notes that Plaintiffs have filed a [26] Motion and [27] Supplemental Motion for Joinder of additional plaintiffs in this action, which are currently pending on the docket in this case. In light of the Court's decision to transfer this case to the Eastern District of Texas, the Court shall deny each of those Motions without prejudice so that Plaintiffs may refile them, if appropriate, upon transfer to the Eastern District of Texas.

## I. BACKGROUND

The 438 Plaintiffs in this action are, or were as of September 24, 2005, inmates at USP Beaumont.[2] Although the Second Amended Complaint in this action focuses on the alleged actions of officials of the Federal Bureau of Prisons, and Plaintiffs' Opposition to Plaintiffs' Motion to Transfer Venue reads as if the BOP was the Defendant in this action, *see* Pls.' Opp'n at 1, the only Defendant actually named in Plaintiffs' Second Amended Complaint is the United

---

[2] As of April 28, 2008, 229 of the 438 Plaintiffs were still inmates in Beaumont, Texas, 28 Plaintiffs had been released from prison, and the remaining Plaintiffs were inmates in other facilities across the country. *See* Pls.'Mem. in Opp'n to Change of Venue Mot. (hereinafter "Pls.' Opp'n"), Ex. E (List of Plaintiff Residences as of April 28, 2008). Additionally, Plaintiffs' Second Amended Complaint seeks damages for wrongful death on behalf of two inmates housed at USP Beaumont during Hurricane Rita who are now deceased. SAC at 94.

States of America, *see* SAC, Caption.

Plaintiffs allege that on September 20, 2005, Plaintiff Kelvin Spotts approached Tim Outlaw, then the Warden of USP Beaumont, to request that the inmates at USP Beaumont be moved to another facility in light of news reports concerning Hurricane Rita's approach. SAC ¶ 41. Nevertheless, Plaintiffs allege, "[BOP] Director Harley Lappin, Assistant Director Bruce Sasser, Assistant Director Joyce Conley (responsible for emergency preparedness), South Central Regional Director Geraldo Maldonado and Warden Tim Outlaw . . . jointly decided" not to relocate inmates to other prisons before or after the arrival of Hurricane Rita. *Id.* ¶¶ 48, 54, 147. On September 24, 2005, Hurricane Rita made landfall and passed over the Beaumont area. SAC ¶¶ 75-89, Ex. B (Tracking Map of Hurricane Rita).[3] Plaintiffs allege that from that date until October 25, 2005, they lacked sufficient water, food, hygienic materials, ventilation, medical attention, toilets, clean clothing and lighting. SAC ¶ 68. Plaintiffs further allege that, as a result, they suffered numerous physical and emotional injuries. *Id.* ¶¶ 98-224.[4]

Plaintiffs' Second Amended Complaint asserts that each of the 438 Plaintiffs in this action exhausted their administrative remedies pursuant to 28 U.S.C. § 2675(a) before filing their

---

[3] The Court notes that it may consider material outside the pleadings on a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).

[4] Specifically, Plaintiffs allege that they suffered from high stress, respiratory disorders, dehydration and malnutrition, diarrhea, infections, sleep deprivation, E. Coli and Salmonella poisoning, muscle atrophy, constipation, post-traumatic stress disorder, suicidal tendencies, depression, and other injuries as a result of conditions within the prison. SAC ¶¶ 98-224. Plaintiffs further allege they were exposed to MRSA staph bacteria and toxic mold which may cause long-term health problems. *Id.* ¶¶ 125, 139-43.

claims with this Court. SAC ¶¶ 6B-7.[5] Specifically, Plaintiffs assert that most of their claims have been denied, and that in all cases, the Plaintiff filed a tort claim at least six months ago as to which no action has been taken. *Id.* ¶ 7. *See generally* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section"). Plaintiffs' Second Amended Complaint also alleges that staff and officers at USP Beaumont have attempted to interfere with Plaintiffs' attempts to exhaust their administrative remedies by filing tort claims. *Id.* ¶¶ 276-85.

Plaintiffs filed their initial Complaint in this action on January 9, 2008. That Complaint included 57 Plaintiffs. *See* Compl., Caption. On March 5, 2008, Plaintiffs filed an Amended Complaint in which they added additional Plaintiffs. *See generally* Amended Compl. As noted above, on April 1, 2008, Plaintiffs filed a Motion for Leave to File Second Amended Complaint, which appears to be unopposed. The Court treats that Second Amended Complaint as the operative pleading in this case, as does Defendant's Motion to Transfer Venue. Plaintiffs' Second Amended Complaint includes seven claims: (1) Negligence (SAC ¶¶ 225-34); (2) Reckless Disregard for Welfare/Deliberate Indifference (*Id.* ¶¶ 235-44); (3) Intentional Infliction of Emotional Distress (*Id.* ¶¶ 245-53); (4) Cruel and Unusual Punishment (as a Constitutional Tort) (*Id.* ¶¶ 254-61)[6]; (5) Malfeasance, Misfeasance and Nonfeasance (*Id.* ¶¶ 262-75); (6)

---

[5] Plaintiffs' Second Amended Complaint contains two paragraphs numbered "6." The Court will refer to the first and second occurrences as 6A and 6B, respectively.

[6] The Court notes that, despite their reference to a constitutional tort, Plaintiffs have only brought this action pursuant to the Federal Tort Claims Act, and have only brought it against the United States. Plaintiffs have not attempted to make out a claim against individual BOP officials under the remedy created in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and "no cause of action for damages for constitutional violations-whether called a *Bivens* action or not-is to be implied against government agencies."

Malice through Denial of Access to Courts (*Id.* ¶¶ 276-85); and (7) Wrongful Death (*Id.* ¶¶ 286-88). Plaintiffs seek $250,000 in damages for each living Plaintiff and $2,000,000 in damages for each of the two deceased Plaintiffs. *Id.* at 96 ¶ 8.

Defendant filed its Motion to Transfer Venue on April 21, 2008, Plaintiffs filed their Opposition on April 29, 2008, and Defendant filed its Reply on May 8, 2008.

## II. LEGAL STANDARD

Defendants argue that venue in this case is improper in the District of Columbia, and that this Court should therefore transfer this case pursuant to 28 U.S.C. § 1406(a). When a case is filed in the wrong federal judicial district, the district court in which the action is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In considering a motion to dismiss for lack of venue, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, * 1 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted). Under 28 U.S.C.§ 1406(a), the decision whether to transfer or dismiss "rests within the sound discretion of the district court."[7] *Naartex Consulting Corp. v.*

---

*Taylor v. FDIC*, 132 F.3d 753, 768 (D.C. Cir. 1997) (citing *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994)).

[7] While Defendant's Motion to Transfer Venue refers to Federal Rule of Civil Procedure 12(b)(3), which provides for the dismissal of a case brought in an improper venue, *see* Def.'s Mot. at 2, the Court notes that Defendant does not actually request that the Court dismiss this case, but argues only that it should be transferred to the Eastern District of Texas. *See id.* at 1. For the reasons discussed below, the Court concludes that transfer, rather dismissal, is the proper course in this case in any event.

*Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983) (citations omitted).

Defendant alternatively argues that, even if this Court concludes that venue might lie in the District of Columbia, the Court should nevertheless exercise its discretion to transfer this case to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As with §1406(a), the Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under 28 U.S.C. § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court must therefore initially determine whether venue in the District of Columbia is proper for Plaintiffs' claims, before turning to the threshold question under 28 U.S.C. § 1404(a) of whether this action "might have been brought" in the Eastern District of Texas. *Id.* at 616. In an action brought under the FTCA, venue is covered by 28 U.S.C. § 1402(b), which provides:

> Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

28 U.S.C. § 1402(b).[8]

---

[8] While citing only the FTCA as authority for their action, Plaintiffs' Second Amended Complaint cites the general venue statute applicable to actions brought against officers or employees of the United States, 28 U.S.C. § 1391(e), and states that venue is proper in this District because the BOP resides here. *See* SAC ¶ 2. Plaintiff's Opposition to Defendant's Motion to Transfer Venue does not contest Defendant's correct assertion that FTCA claims are governed by that statute's venue provision, set forth above. Instead, as discussed below, Plaintiff argues that the act or omission at issue in this case occurred in this District. *See* Pls.' Opp'n.

Even if venue is proper in the Eastern District of Texas, the Court may transfer a case only if the balance of private and public interests weighs in favor of transfer. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing James W. Moore & Brett A. Ringle, *Federal Practice* ¶ 0.345[5] (2d ed.1995); 15 Charles A. Wright et al., *Federal Practice and Procedure* §§ 3848-53 (2d ed.1986)); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). However, the deference normally given to a plaintiff's choice of forum is "lessened when the plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). The plaintiff's choice of forum is also "conferred less deference by the court when [it] is not the plaintiff's home forum." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).

The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Jumara*, 55 F.3d at 879-80 (citing Moore & Ringle, *supra*, ¶ 0.345[5]; Wright et al., *supra*, §§ 3854); *Trout Unlimited*, 944 F. Supp. at 16.

## III. DISCUSSION

Defendant argues that venue for this action is improper in the District of Columbia and that this case should therefore be transferred to the Eastern District of Texas pursuant to 28 U.S.C § 1406(a), and further argues that, even if venue lies in the District of Columbia under the FTCA's venue provision, the Court should exercise its discretion to transfer this action to the Eastern District of Texas in pursuant to 28 U.S.C. § 1404(a). The Court agrees with Defendant that venue for this action does not properly lie in the District of Columbia and that, as a result, this action should be transferred to the Eastern District of Texas. In the alternative, the Court concludes that in the interest of justice, including the convenience of parties and witnesses, this case should be transferred to the Eastern District of Texas. The Court shall therefore grant Defendant's Motion to Transfer Venue.

*A.     FTCA Venue for This Action Does Not Lie in the District of Columbia*

As noted above, Plaintiffs' Second Amended Complaint erroneously alleges that, pursuant to 28 U.S.C. § 1391(e), venue for this action is proper in the District of Columbia because the BOP resides in the District. SAC ¶ 2. Plaintiffs do not challenge Defendant's correct assertion that the appropriate standard for determining venue in FTCA cases is contained in 28 U.S.C. § 1402(b), Def.'s Mot. at 3, and that under that provision, Plaintiffs' FTCA claims may be brought "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Both parties agree that the Plaintiffs cannot satisfy the first prong of this provision because none of them are residents of the District

of Columbia.[9]  Def.'s Mot. at 4; Pls.' Opp'n at 3.  Relying on the second prong of the FTCA venue provision, however, Plaintiffs argue that venue properly lies in the District of Columbia because the acts or omissions complained of occurred at the BOP's Central Office in Washington, D.C.  Pls.' Opp'n at 8-9.  According to Plaintiffs, while the alleged tortious conduct had its operative effect on inmates in USP Beaumont, the negligent acts or omissions that caused the inmates' injuries–i.e., the decisions to keep them at USP Beaumont during Hurricane Rita and regarding their care after the hurricane–occurred at the Central Office.  *Id.*

Defendant makes two arguments in response to Plaintiffs' claim.  First, Defendant asserts that Plaintiffs are factually incorrect, relying on the Declaration of Linda R. Thomas, Administrator of the Correctional Services Branch of BOP, in which she avers that the decision to keep the prisoners at USP Beaumont before and during Hurricane Rita was made by the Regional Director in Dallas, Texas, rather than in Washington, D.C.  Def.'s Reply, Ex. (Thomas Decl.) ¶ 4.[10]  Second, Defendant argues that, even if the decision had originated in Washington,

---

[9] For venue purposes, an inmate's residence is his place of incarceration. *In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978); *Bryant v. Carlson*, 652 F. Supp. 1286, 1287 (D.D.C. 1987). According to Plaintiffs' Opposition, as of the date of that filing, 229 of the 438 Plaintiffs in this action still resided at USP Beaumont.  Pls.' Opp'n at 14, Ex. E (List of Pl. Residences as of 4/28/08).  The remainder of the Plaintiffs–with the exception of the two that are deceased–have been transferred to other prisons or released.  *Id.*

[10] In their Opposition, Plaintiffs repeatedly stress that Defendant Motion to Transfer Venue did not include an affidavit in support of Defendant's assertion that the decision to keep the prisoners at USP Beaumont was not made in Washington, D.C.  *See* Pls.' Opp'n at 10, 12.  Defendant provided just such an affidavit in the form of Ms. Thomas' Declaration, attached as an exhibit to Defendant's Reply.  The Court notes that Plaintiff has made no attempt to challenge Ms. Thomas' Declaration by seeking leave of court to file a sur-reply.  *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond.").

9

D.C., venue would still be improper in this District. Def.'s Reply. at 5.  The Court agrees with Defendant in both respects, and discusses each in turn.

As an initial matter, the Court notes a legal infirmity with Plaintiffs' argument that venue is proper in the District of Columbia notwithstanding the fact that, as Plaintiffs admit in their Opposition, the operative effects of the decisions not to evacuate USP Beaumont before or after Hurricane Rita were felt by the prisoners *in Beaumont*. Pls.' Opp'n at 9.  Specifically, Plaintiffs argue that the Supreme Court's decision in *Richards v. United States*, 369 U.S. 1, 9-10 (1962) instructs that under the FTCA, the relevant location is where the act or omission giving rise to a tort occurred, rather than the place where the operative effect is felt. *See id.* at 8-9.  *Richards*, however, addressed choice-of-law under the FTCA, and specifically distinguished that determination from the issue of venue under that statute, noting "that considerations underlying the problem of venue are substantially different from those determining applicable law." *Richards*, 369 U.S. at 9-10 & n.20.  As such, Plaintiffs' argument stands on faulty legal ground.

Moreover, as noted above, Plaintiffs make no efforts to challenge Ms. Thomas' Declaration, in which she avers that "[t]he decision to keep the prisoners in their lawful prison was made, as it typically is, by the Regional Director in Dallas, Texas." Def.'s Reply, Ex. (Thomas Decl.) ¶ 5.  Plaintiffs' Opposition stresses their allegations that "the upper echelon Bureau of Prison officials made the decision not to evacuate," Pls.' Opp'n at 5, and that the BOP's Director and Assistant Directors (in addition to Regional Director Geraldo Maldonado and Warden Tim Outlaw) were involved in that decision. *See* SAC ¶¶ 48, 54.  But Plaintiffs' allegations–along with their speculation that "[o]nly the Central Office would have authority" to make the decisions at issue, Pls.' Opp'n at 8–appear to be unfounded.  Plaintiffs' Opposition

10

argues that their allegations are confirmed by certain newspaper articles in which third parties (including a correctional officer working at USP Beaumont during Hurricane Rita) claim that the decision not to evacuate came from the BOP headquarters in Washington, D.C. *See* Pls.' Opp'n at 5-8 (citing Pls.' Opp'n Exs. B and C). Plaintiffs fail to recognize, however, that newspaper articles constitute inadmissible hearsay, which cannot serve as evidence of the truth of the matter asserted, because they "provide no evidence of the reporter's perception, memory or sincerity and, therefore, lack circumstantial guarantees of trustworthiness.'" *Hutira v. Islamic Republic of Iran*, 211 F. Supp. 2d 115, 123 (D.D.C. 2002) (quoting *Eisenstadt v. Allen*, 113 F.3d 120 (9th Cir. 1997) ("newspaper articles clearly fall within the definition of hearsay . . . and, thus, are inadmissible") and citing *United States v. Harris*, 271 F.3d 690, 696 (7th Cir. 2001) (noting that "daily newspapers are not reliable evidentiary sources")). *See also Metro. Council of NAACP Branches v. Fed. Communications Comm'n*, 46 F.3d 1154, 1165 (D.C. Cir. 1995) ("We seriously question whether a New York Times article is admissible evidence of the truthfulness of its contents."). In particular, the third party statements referenced in the newspaper articles to which Plaintiffs cite were not made by BOP officials, but by third parties, and therefore are not party admissions. In short, Plaintiffs offer the Court no reason to question Ms. Thomas' uncontroverted averment that the decisions at issue in this case were made by the Regional Director in Dallas, Texas, and not in this District. Def.'s Reply, Ex. (Thomas Decl.) ¶¶ 4-5.

      Defendant is also correct that, even if some of the decisions at issue had been made in the District of Columbia, venue would not necessarily be proper in this District. The Court need not dwell upon this argument because it has already concluded that the relevant decisions were not made in the District of Columbia, but simply notes that "mere involvement on the part of federal

agencies who are located in Washington, D.C. is not determinative." *Shawnee Tribe*, 298 F. Supp. 2d at 25-26. "Under the prevailing interpretation of [the venue provision at issue here, 28 U.S.C. § 1402(b)], venue is proper in the District of Columbia if sufficient activities giving rise to the plaintiff's cause of action took place here." *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984). Plaintiffs cannot establish that any of the acts giving rise to their tort claims occurred in the District of Columbia, let alone that sufficient activities of that type occurred here. As such, the Court concludes that venue for Plaintiffs' FTCA action does not lie in the District of Columbia.

      B.    *The Court Shall Exercise Its Discretion to Transfer This Action to the Eastern District of Texas Pursuant to 28 U.S.C. §§ 1406(a) and 1404(a)*

Having found that venue for Plaintiffs' action does not lie in the District of Columbia, the Court is faced with the options of dismissing this action or transferring it, in the interest of justice, to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). As noted above, Defendant has not actually requested that the Court dismiss Plaintiffs' Complaint and the Court declines to do so, in light of the serious allegations it raises. Instead, the Court opts to transfer this case to the Eastern District of Texas, pursuant to both § 1406(a) and § 1404(a), which provides for a transfer of venue "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The Court therefore briefly engages in the analysis required for a transfer pursuant to § 1404(a).

As to the threshold question of whether this action "might have been brought" in the Eastern District of Texas, *Van Dusen*, 376 U.S. at 616, the Court notes that FTCA venue in this case is clearly proper in the Eastern District of Texas because over half of the Plaintiffs still

reside in Beaumont, Texas. *See* Pls.' Opp'n at 14, Ex. E. Furthermore, aside from the decision to keep the prison open, many of the specific acts or omissions alleged in the Second Amended Complaint occurred within the walls of USP Beaumont. For example, Plaintiffs allege: that Warden Outlaw did not respond to Plaintiffs' concern about the hurricane; that USP Beaumont guards handed out plastic bags for the inmates to fill with human waste; that prison officials denied inmates access to food and medical attention; and that prison staff discouraged the filing of tort claims. SAC ¶¶ 41, 68, 116, 131, 157, 282. Clearly all of these acts occurred in Beaumont, i.e., within the Eastern District of Texas.

      1. *The Private Interests of the Parties Favor the Eastern District of Texas*

Even though this action could have been brought in the Eastern District of Texas, the Court may transfer the action under § 1404(a) only after balancing "case-specific factors which include the private interests of the parties and public interests such as efficiency and fairness." *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127 (citation omitted). Here, Plaintiffs' choice of forum is entitled to less than ordinary deference as none of the Plaintiffs reside in the District of Columbia, s*ee* Pls.' Opp'n at 14, Ex. E, and this action bears no "meaningful ties" to the District of Columbia. *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. Plaintiffs also attempt to support their choice of forum by arguing that litigating this case in the Eastern District of Texas would be less convenient for Plaintiffs' counsel, *see* Pls.' Opp'n at 14-15; however, the potential inconvenience to Plaintiffs' counsel "is of minor, if any, importance under § 1404(a)," *Islamic Republic of Iran*, 477 F. Supp. at 143. Similarly, although Plaintiffs argue that the District of Columbia is a more convenient forum for their expert witnesses, Pls.' Opp'n at 14-15, "expert witnesses or witnesses who are retained by a party to testify carry little weight because

they 'are usually selected because of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any.'" *Coppola v. Ferrellgas*, Civ. A. No. 07-4023, 2008 WL 612676, at *5 (E.D. Pa. Mar. 6, 2008).

Defendant clearly favors litigating this case in the Eastern District of Texas, primarily because over half of the 438 Plaintiffs still reside in Beaumont. Def.'s Reply at 9.[11] While Plaintiffs argue that the convenience of inmate witnesses need not be considered because Plaintiffs plan to take videotape depositions, Pls.' Opp'n at 15, the Court agrees with Defendant that the large number of Plaintiffs still residing in Beaumont strongly favors litigating this case there. As both parties acknowledge, "[t]he cost of transporting a penitentiary inmate is prohibitively expensive." Pls.' Opp'n at 16; *see* Def.'s Reply at 9. Furthermore, Plaintiffs are not the only relevant witnesses in this case, which will likely require testimony from prison staff and guards in Beaumont, as well as the Dallas-based Regional Director responsible for the decision that remains the crux of the Plaintiffs' claim. Finally, with respect to access to proof, the Court cannot overlook the fact that USP Beaumont, itself, is located in the Eastern District of Texas. While Plaintiffs argue that "nothing in the way of an accident scene has been preserved," such that "there is no evidentiary value still attaching to the place," Pls.' Opp'n at 15-16, the Court

---

[11] Plaintiffs assert that the number of Plaintiffs residing at USP Beaumont "will continue to fall," in light of BOP's plan to designate high security level inmates to other high security level institutions and transition USP Beaumont into a Medium Security prison. Pls.' Opp'n at 14 & n.27, Ex. D (2/22/08 Mem. to USP Beaumont Inmates). While it is not clear where any Plaintiffs that are transferred will wind up, they will not be housed in the District of Columbia because "there is no federal facility for the housing of sentenced federal inmates in the D.C. area." *Joyner v. Dist. of Columbia*, 267 F. Supp. 2d 15, 21 (D.D.C. 2003). As such, Plaintiffs' potential change of residence does not alter the Court's analysis of venue for this case.

agrees with Defendant that, based on Plaintiffs' allegations, "the layout and the condition of the prison [are likely to be] of vital importance in this case," Def.'s Reply at 9 n.3. Indeed, for actions such as this, involving physical sources of proof, "the district in which the institution is located will ordinarily be the more convenient forum." *See, e.g., Joyner*, 267 F. Supp. 2d at 20-21 (citing *Starnes v. McGuire*, 512 F.2d 918, 931 (D.C. Cir. 1974)).

> 2. *The Public Interests Also Favor the Eastern District of Texas*

Finally, the Court must consider the public interests weighing in favor of a transfer of this action to the Eastern District of Texas. At the outset, the Court notes that Plaintiffs are entirely incorrect when they suggest that the law of the District of Columbia would apply to this case because it is where the tortious conduct at issue took place. Pls.' Opp'n at 16. As discussed above, the relevant tortious conduct in this case did *not* occur in the District of Columbia, but rather occurred in either Beaumont or Dallas, Texas. In either event, under *Richards*, Plaintiffs' tort claims would be governed by the law of the State of Texas, with which the federal judges in the Eastern District of Texas are undeniably more familiar. Moreover, as Defendant notes, insofar as this case requires the application of federal law, the FTCA, the United States District Court for the Eastern District of Texas is as adept at applying that law as this Court. Def.'s Mot. at 8.[12]

Most significantly, the Court finds that the Eastern District of Texas may have a superior interest in hearing this case because "[t]here is a local interest in having localized controversies decided at home." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003) (quoting

---

[12] The Court also notes that the caseload in the Eastern District of Texas and this District appear to be in equipoise. *See* Def.'s Mot., Ex. A. (4/15/08 Judicial Caseload Profiles for Eastern District of Texas and District of Columbia).

*Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983)).  Plaintiffs contest the application of this rationale in this case, asserting that "in Beaumont, inmates are regarded as a less than human commodity tolerated because they provide jobs and support for the local economy."  Pls.' Opp'n at 17.  The Court has no basis for judging the accuracy of Plaintiffs' *ipse dixit*.  However, the Court would point out that Plaintiffs' FTCA claims must be tried in a bench trial, rather than by a jury of Beaumont residents.  *See* 28 U.S.C. § 2402 ("any action against the United States under [28 U.S.C. § 1346] shall be tried by the court without a jury, except that any action against the United States under [§ 1346(a)(1), not at issue here] shall, at the request of either party to such action, be tried by the court with a jury.").  The Court has no doubts that a federal judge in the Eastern District of Texas will be able to provide Plaintiffs with a just trial.  As such, the Court finds that the public interests favor litigating this action in the Eastern District of Texas.

### IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Plaintiffs' [7] Motion for Leave to File Second Amended Complaint, shall grant Defendant's [9] Motion to Transfer Venue to the Eastern District of Texas, and shall deny without prejudice Plaintiff's pending [26] Motion and [27] Supplemental Motion for Joinder of additional plaintiffs, so that Plaintiffs may refile those Motions, if appropriate, upon transfer to the Eastern District of Texas.  An appropriate Order accompanies this Memorandum Opinion.

Date:   June 23, 2008

                                       */s/*  
                                       COLLEEN KOLLAR-KOTELLY  
                                       United States District Judge