# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DIVISION OF TEXAS
# BEAUMONT DIVISION

––––––––––––

No. 1:08-CV-376

––––––––––––

Kelvin A. Spotts, et al.

                                      Plaintiffs

v.

The United States of America

                                      Defendant

––––––––––––––––––––

Report and Recommendation of United States Magistrate Judge

––––––––––––––––––––

More than 400 individuals, all represented by a single counsel, seek to recover money damages and attorney's fees from the United States of America under the Federal Tort Claims Act.

This action is referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636, Appendix B, the Local Rules of Court for the Assignment of Duties to U.S. Magistrate Judges, and General Order No. 05-04, to hear and determine all pretrial motions (other than motions excepted in 28 U.S.C. § 636(b)(1)(A)), and to submit to the presiding United States district judge proposed findings of fact, conclusions of law, and recommendations for the disposition of the case.

The United States of America (herein "United States" or "government") moves for dismissal. This report addresses that motion.

No. 1:08-CV-376

## I.   Factual Background

In September, 2005, all plaintiffs allegedly were incarcerated at the United States Penitentiary at Beaumont, Texas ("USP-Beaumont").[1]  On September 24, 2005, Hurricane Rita made landfall, scoring almost a direct hit on the Beaumont area.[2]  Plaintiffs claim that the United States was negligent in failing to evacuate USP-Beaumont inmates *prior* to the storm and in failing to take steps to ensure their safety and welfare *after* the hurricane made landfall.  Plaintiffs aver that, due to the loss of electrical power, as well as the lack of potable water and functional plumbing, they suffered extreme deprivations with respect to food, water, hygiene, temperature and medical care for several weeks after the hurricane made landfall. They allege these deprivations resulted in the death of two inmates, caused others to suffer staph infections and other illnesses, and caused psychological injuries.

## II.   Government's Motion to Dismiss

The United States moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1).  The motion is based on the United States' sovereign immunity from suit and liability.  The government acknowledges that the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq*. ("FTCA")  waives sovereign immunity from certain negligence claims, but contends that such waiver does not extend to the

---

[1]     As set forth in the Third Amended Complaint, USP-Beaumont is one of four penal facilities at the Federal Correctional Complex in Beaumont.  The other facilities comprising FCC-Beaumont are a prison camp, a correctional institution for medium security offenders and a correctional institution for low security offenders.

[2]     Until shortly before reaching landfall, Hurricane Rita was forecast to come ashore significantly to the west of Beaumont. An evacuation for Jefferson County, where USP-Beaumont is located, was not ordered until the morning of September 23.  Angela Macias and Jacqueline Lane Beaumont Enterprise, September 23, 2005, Southeast Texas Flees, BEAUMONT ENTERPRISE Sept. 23, 2005.

No. 1:08-CV-376

negligence claims of plaintiffs.  Specifically, the United States argues that the FTCA expressly *excepts* from its waiver of sovereign immunity any negligence claim based upon the exercise or performance, or the failure to exercise or perform, a *discretionary function or duty* on the part of a federal agency or employee.

The government contends that the decision as to whether to evacuate inmates at USP-Beaumont, as well as the decisions made regarding preparations for the hurricane and its aftermath, all fall within the discretionary exception function.  These decisions, according to the government, were grounded in public policy and were the types of decisions Congress intended to protect when enacting the discretionary function exception within the FTCA.  Accordingly, plaintiffs' claims are barred.

Attached to the motion to dismiss is a declaration, made in accordance with 28 U.S.C. § 1746, from Gerardo Maldonado, Jr., the Regional Director for the South Central Region of the United States Bureau of Prisons ("BOP").[3]  In his declaration, Mr. Maldonado discusses numerous relevant factors that govern BOP determinations as to when and how to evacuate inmates during natural disasters. He states how those factors were evaluated with respect to Hurricane Rita, and ultimately concludes that evacuation was impractical:

> *Upon learning of the potential threat of Hurricane Rita's landfall in the southeast Texas area, BOP staff evaluated FCC Beaumont's building specifications, supply of life sustaining necessities, staff resources, and other necessary equipment and supplies.  In addition, FCC Beaumont's emergency weather preparations were evaluated when staff learned of Hurricane Rita's potential threat.*

---

[3]    Mr. Maldonado's entire declaration is attached as Exhibit "A" to government's motion to dismiss.

No. 1:08-CV-376

*In a potential evacuation, as with any regular move of inmates, factors that must be considered include: (1) the safety of the general public; (2) the distances to be traveled as well as the conditions of travel at the time; and (3) the number of staff required to transport inmates from point A to point B. . . . Due to the size of the FCC Beaumont inmate population, additional BOP staff, who are specially qualified and trained to transport inmates, would be needed from BOP locations all over the United States as well. The time needed to evacuate the entire inmate population of FCC Beaumont would be approximately one week.*

*An attempt to evacuate FCC Beaumont would be particularly impacted by the evacuation efforts of the local civilians. In the days immediately preceding landfall of Hurricane Rita, the roadways that would have been used to transport inmates from FCC Beaumont, via ground transportation, were already gridlocked by civilians leaving the Texas communities of Beaumont, Galveston and Houston.*

*Additionally, despite the arrival of a hurricane, proper inmate supervision necessitates keeping inmates designated as separatees apart, managing gang affiliates and rivals, and providing heightened supervision of inmates with behavioral issues.*

*In accordance with the issues raised above, the design and construction of the facilities at FCC Beaumont, safety of staff and inmates, danger to the public, as well as transportation logistics, the Complex was not evacuated prior to the landfall of Hurricane Rita on September 24, 2005. Such an evacuation of the Complex would have been contrary to the ultimate need and responsibility to balance the safety concerns affecting inmates, staff, and community.*

With respect to post-landfall operations at USP-Beaumont, Mr. Maldonado's declaration states:

*Some inmates from the facility were evacuated after Hurricane Rita made landfall and passed through the area, but these inmates were only relocated to help relieve staff members that were managing the remaining inmates at the Complex. While conditions were admittedly*

Page 4 of  16

No. 1:08-CV-376

*difficult for staff and inmates at the Complex after the landfall of Hurricane Rita, immediate efforts were undertaken to repair damaged portions of the institution and bring the institutions back to normal operating conditions.*

Plaintiffs' counsel filed a timely, trenchant and resourceful response in opposition to the government's motion. Plaintiffs' pertinent arguments are recited and evaluated in Section IV. below.

### III.   Procedural Standard

Federal courts are courts of limited jurisdiction. Absent authority conferred by a federal statute or the United States Constitution, they lack the power to adjudicate claims. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied*, 534 U.S. 993 (2001); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *Howery*, 243 F.3d at 916; *Estate of Martinueau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000). "[T]here is a presumption against subject-matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges subject-matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "'A case is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Krim v. PcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

No. 1:08-CV-376

"In ruling on a motion to dismiss for lack of subject-matter jurisdiction, a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002).   All uncontroverted allegations in the complaint must be accepted as true.   *See Den Norske Stats Oljeselskap As*, 241 F.3d at 424; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981), *cert denied*, 454 U.S. 897 (1981).  When examining a motion to dismiss under Rule 12(b)(1), however, unlike a motion to dismiss under Rule 12(b)(6), a court is entitled to consider disputed facts as well as undisputed facts in the record. *See Ramming*, 281 F.3d at 161-62; *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986).

## IV.   Discussion and Analysis

As a general rule, the United States enjoys sovereign immunity from suit unless it has specifically waived immunity. *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  Such immunity deprives federal courts of subject-matter jurisdiction. *Chapa v. United States Dept. of Justice*, 339 F.3d 389 (5th Cir. 2003).

*A.    FTCA Waiver and Discretionary Function Exception*

FTCA waives sovereign immunity from suit with respect to claims regarding "injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2679(b)(1).   Nonetheless, courts must strictly construe waivers of the government's sovereign immunity, and must resolve all ambiguities in favor of the

No. 1:08-CV-376

sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Chapa v. United States Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003).

FTCA contains several express exceptions to its general waiver of immunity. Section 2680(a) provides that the waiver contained in the FTCA does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Guile v. United States*, 442 F.3d 221, 229 (5th Cir. 1997) (emphasis added). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain activities from exposure to suit by private individuals." *United States v. S.A. Empresa De Viaco Area Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

To determine when the discretionary function exception applies, a court must first ascertain whether the challenged act involves an element of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). "To demonstrate that its conduct was discretionary, the government need only show that there was 'room for choice' in making the allegedly actionable decision or decisions." *Santana-Rose v. United States*, 335 F.3d 39, 43 (5th Cir. 2003). Governmental action is not discretionary when a federal statute, regulation, or policy specifically prescribes a course of action that the government employee must follow. *Id.*; *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Ashford v. United States,* 511 F.3d 501, 504 (5th Cir. 2007) (decision regarding how to protect one inmate from another was not a discretionary act because regulation *required* placing inmate in solitary confinement upon expressing certain security concern, thereby removing element of choice).

No. 1:08-CV-376

Second, when challenged conduct is found to be discretionary, the court must then examine whether the judgment or decision is based on considerations of social, economic or public policy. *Gaubert*, 499 U.S. at 325; *Santana-Rosa*, 335 F.3d at 43. "Because the purpose of the exception is to 'prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort,' when properly construed, the exception 'protects only governmental actions and decisions based on considerations of public policy.'" *Gaubert*, 449 U.S. at 323 (quoting *Berkovitz*, 486 U.S. at 537) (internal quotations omitted).

B.    *Did Challenged Acts Involve Elements of Judgment or Choice?*

With respect to the first prong of the *Gaubert* test, BOP clearly has a *statutory* duty to provide for the safekeeping, care, and subsistence of all federal prisoners. *See* 18 U.S.C. § 4042(a).[4] However, the statute does not dictate the *manner* in which the duty must be fulfilled, and thus does not specifically prescribe a course of action that government employees must follow. *Santana-Rose*, 335 F.3d at 44 (noting that Section 4042 does not mandate a specific course of conduct, but rather leaves BOP ample room for judgment); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998), *cert. denied*, 526 U.S. 1130 (1999) (concluding that BOP retains discretion in the means it may use to fulfill the duty to safeguard prisoners, such that the discretionary function is applicable). The mandate to protect prisoners contained within Section 4042 does not define a "non-discretionary course of action specific enough to render the discretionary

---

[4]    Section 4042 requires the Bureau of Prisons to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."

No. 1:08-CV-376

function exception inapplicable." *Campillo v. U.S. Penitentiary*, 203 Fed. App'x 555, 557 (5th Cir. 2006) (*per curiam*).

1.    <u>Plaintiffs' Argument</u>

In light of the clear and uniform jurisprudence just cited, plaintiffs cannot rely on the above statute as specifically prescribing a mandatory course of action to be taken by employees at USP-Beaumont during the events at issue in this lawsuit.   Rather, plaintiffs contend that the element of judgment or choice from the allegedly actionable decision or decisions at issue here was removed due to the combined effect of an Executive Order,[5] an implementing regulation,[6] and USP-Beaumont's Adverse Weather Contingency Plan.  These three items are described briefly below.

a.    *Executive Order*

Executive Order 11988, titled "Floodplain Management," was signed by President Jimmy Carter on May 24, 1977.  It directs federal agencies to take action to reduce the risk of flood loss, minimize the impact of floods on human safety, health and welfare, and restore and preserve the natural and beneficial values served by floodplains in carrying out its responsibilities when: (a)

---

[5]    An Executive Order is an order issued by or in behalf of the President, usually intended to direct or instruct the actions of executive agencies or government officials, or to set policies for the executive branch to follow.

[6]    As used here, "regulation" refers to a rule or order issued by an administrative agency. Substantive regulations authorized by and consistent with a statute have the force and effect of law, and are binding on federal courts, provided the regulation is "not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §§ 706 (2)(A), (C); <u>see</u> <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 295-96, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979); <u>Batterton v. Francis</u>, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448 (1977).

No. 1:08-CV-376

acquiring, managing and disposing of federal lands and facilities; (b) providing federally undertaken, financed or assisted construction; and (c) conducting federal activities and programs affecting land use.  Further, each federal agency must evaluate the potential effects of any actions it may take in a floodplain and to prescribe procedures for determining whether any proposed action will occur in a floodplain, and, if so, consider alternatives to avoid adverse effects and incompatible development in the floodplains.  Finally, when an agency finds the only practicable alternative requires sitting in a floodplain, the agency shall, prior to taking action: (a) design or modify its action in order to minimize potential harm to or within the floodplain; and (b) prepare and circulate a public notice containing an explanation of why the action is proposed to be located in the floodplain.

> b.   *Regulation*

The regulation relied upon by plaintiffs, 24 C.F.R. § 55.1, "implements the requirements of Executive Order 110988" for programs administered by the United States Department of Housing and Urban Development (HUD), and constitutes HUD's "interpretation of the executive order in the project approval decision making processes of HUD and of grant recipients subject to 24 C.F.R. part 58." 24 C.F.R. § 55.1.  The regulation addresses "the proposed acquisition, construction, improvement, disposition, financing and use of properties located in a floodplain for which approval is required either from HUD under any applicable HUD program or from a grant recipient subject to 24 C.F.R. part 58." *Id*.

No. 1:08-CV-376

The regulation "employs the principles of the Unified National Program for Floodplain Management." *Id.* Its terminology includes "coastal high hazard area"[7] and "critical action."[8] Further, when any critical action is taken within a coastal high hazard area, the regulation requires that :

> All critical actions in the 500-year floodplain shall be designed and built at or above the 100-year floodplain (in the case of new construction) and modified to include:
>
> (1) Preparation of and participation in an early warning system;
>
> (2) An emergency evacuation and relocation plan;
>
> (3) Identification of evacuation route(s) out of the 500-year floodplain; and
>
> (4) Identification marks of past or estimated flood levels on all structures.

24 C.F.R. § 55.20.

---

[7] "Coastal high hazard area, as defined in this rule, means an area subject to high velocity waters, including but not limited to hurricane wave wash or tsunamis." 24 C.F.R. § 55.2(b)(1).

[8] "Critical action means any activity for which even a slight chance of flooding would be too great, because such flooding might result in loss of life, injury to persons, or damage to property." Critical action includes:

> activities that create, maintain or extend the useful life of those structures or facilities that. . . [a]re likely to contain occupants who may not be sufficiently mobile to avoid loss of life or injury during flood or storm events, e.g., persons who reside in hospitals, nursing homes, convalescent homes, intermediate care facilities, board and care facilities, and retirement service centers. Housing for independent living for the elderly is not considered a critical action.

24 C.F.R. § 55.2

No. 1:08-CV-376

c.    *Adverse Weather Contingency Plan*

The Federal Correctional Complex in Beaumont adopted an Adverse Weather Contingency Plan (the "Plan"), pages 13 through 32 of which address preparations to be made for tropical storms, hurricanes, tornadoes and storm surge, including preparations regarding data retention, preservation of physical assets, securing the facility, stocking food and providing for health services. The Plan states that in light of the unpredictability of the strength and time of impact for natural disasters: (a) it is unlikely time will allow for the evacuation of inmates; and (b) after a hurricane, electricity and water services may be interrupted for more than five days or longer, and that the facility's generator may be rendered inoperative due to debris or water.

2.    Application

Plaintiffs argue that as USP-Beaumont was built in a "coastal high hazard area" (as defined in 24 C.F.R. § 55.2(b)(1)), Executive Order 11988 requires the Bureau of Prisons to take steps to minimize the impact of floods on human safety and welfare. They further contend 24 C.F.R. § 55.20(e) required an evacuation plan, and that under the Adverse Weather Contingency Plan, buildings must be evacuated in the case of a Category 4 or 5 hurricane. Thus, plaintiffs argue that the elements of choice or judgment were removed, and the discretionary function exception to the FTCA's waiver of sovereign immunity does not protect the United States from suit or liability for negligence of BOP officials on the occasion in question.

While this argument is creative, it is not well-taken. The language in Executive Order 11988 is as general and nonspecific as the language used in 28

No. 1:08-CV-376

U.S.C. § 4042, and, as a result, fails to dictate the manner in which the duty imposed by the Executive Order must be fulfilled.  The cited regulation cannot be engrafted onto the Executive Order because it governs only matters for which HUD approval is required.  Neither the building nor operation of USP-Beaumont required HUD approval or approval from a grant recipient.  Thus, operations at USP-Beaumont are not governed by 24 C.F.R. § 55.20(e), and officials there were not required to take the actions described in the regulation.[9]

Finally, USP-Beaumont's Adverse Weather Contingency Plan does not remove the element of choice or judgment from the challenged actions.   In contrast to plaintiffs' assertions that buildings must be evacuated in the case of a Category 4 or 5 hurricane, the Plan states that: "[g]iven the unpredictability of the strength and time of impact for natural disasters, it is unlikely time will allow the inmate population in the secure institution to be evacuated."  Rather, it merely indicates that while  staff members' families may use the prison as a storm shelter of "last resort" in such circumstances, the complex should not be considered a primary source of shelter.[10]  And, in any event, Hurricane Rita was not a Category 4 or 5 hurricane at landfall.

---

[9]     BOP is a divisional agency with the United States Department of Justice (DOJ), and, accordingly, is not governed by HUD or a HUD grant recipient.

[10]     The Plan provides: "Since [USP-Beaumont] is located in an evacuation zone for Category 4 and above hurricanes, [USP-Beaumont] should not ordinarily be considered as the primary source of shelter for staff families.  Each staff member should develop personal plans to provide shelter for family members or to relocate them if you also live in an evacuation zone, in accordance with the recommendations of the National Hurricane Center.  The institutions should not ordinarily be available for use as a family shelter before or during a hurricane. To the extent possible, however, the institution will implement a storm shelter during the emergency as a last resort."

No. 1:08-CV-376

In summary, plaintiffs fail to identify a statute, regulation or policy that prescribes specific actions that officials at USP-Beaumont should have taken regarding evacuation and preparations for the storm. Therefore, with respect to such decisions, there was "room for choice." As a result, the first prong of the *Gaubert* test has been satisfied.[11]

C.    *Social, Economic and Public Policy Issues?*

The second prong of the *Gaubert* test examines whether challenged acts were grounded in social, economic or political policy. The declaration of Regional Director Maldonado indicates that the initial decision regarding *pre-storm* evacuation of USP-Beaumont, was based on considerations which included: (a) the safety of the general public; (b) the safety of inmates and (c) allocation of resources, including housing and staff. These considerations involve social and economic issues, as well as issues of public policy. As a result, passing judgment on the decision as to whether evacuate USP-Beaumont would involve judicial second-guessing of administrative decisions that the discretionary function exemption precludes.

Plaintiffs' allegations of negligence by prison officials in failing to properly prepare for the *aftermath* of Hurricane Rita are analogous to alleged acts of negligence in *United States v. Freeman*, 556 F.3d 326 (5th Cir. 2009). In *Freeman*, the plaintiffs' decedents were located at the New Orleans Convention Center after Hurricane Katrina. Prior to Hurricane Katrina, a presidential order directed the Secretary of Homeland Security to develop a National Response Plan ("National

---

[11]    It is at least passing strange that the regulations and documents relied on by plaintiffs relate to preparations for a flood, but neither the damages caused to USP-Beaumont by Hurricane Rita, nor the injuries allegedly suffered by the plaintiffs, were the result of flood waters.

No. 1:08-CV-376

Plan"). It provided that, following catastrophic events, "[f]ederal support must be provided in a timely manner to save lives, prevent human suffering and mitigate severe damage." The plaintiffs alleged the government was negligent in performing its duties under the National Plan by failing to provide individuals housed at the Convention Center with food, water, shelter and medical assistance. The Fifth Circuit, in concluding the discretionary function exception exemption applied, held that the second prong of the *Gaubert* test was satisfied, stating "the government's decisions about when, where, and how to allocate limited resources within the exigencies of an emergency are the types of decisions that the discretionary function exception  was designed to shelter from suit." *Id.* at 340. The court also stated that "decisions regarding the feasibility, safety, and benefit of mobilizing federal resources in the aftermath of a natural disaster are grounded in social, economic, and public policy." *Id.* at 341.[12]

Similar to decisions faced by government officials during Hurricane Katrina, officials at USP-Beaumont, in determining what preparations should be made for the aftermath of Hurricane Rita, were required to determine how resources, including staff and materials, should be allocated. Such determinations would have been guided by public policy considerations, such as the safety of staff and inmates, as well as budgetary concerns. As a result, the decisions made by officials regarding the aftermath of Hurricane Rita were also the types of decisions Congress did not wish to subject to judicial second-guessing.

---

[12]    Although <u>Freeman</u> addressed claims under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121-5208, and its discretionary function exception, contained in § 5148, the Fifth Circuit held that such exception has the same applicability as the similarly named exception in the FTCA.  <u>Freeman</u>, 556 F.3d at 336.

The second-prong of the *Gaubert* test is therefore satisfied with respect to both the pre-storm and post-storm alleged acts of negligence.

## V.   Recommendation

The motion to dismiss should be granted and this lawsuit dismissed without prejudice for lack of subject-matter jurisdiction.

## VI.   Objections

Objections must be (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report.   28 U.S.C. § 636(b)(1).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

**SIGNED** this <u>12</u> day of <u>   June   </u>, 2009.

_____
EARL S. HINES
UNITED STATES MAGISTRATE JUDGE